OPINION *Page 2 
{¶ 1} Appellant, Kipp W. Kubbs, appeals from the decision of the Licking County Common Pleas Court which affirmed the decision of the Board of Zoning Appeals of the City of Pataskala which allowed a zoning variance.
 {¶ 2} Phillip and Constance Smith ("Smiths") applied for a zoning variance which would allow the Smiths to split a four acre tract of land on Headley Mill Road in the City of Pataskala into two home sites of two acres each.
 {¶ 3} The Smiths have owned this four acre lot since the 1980's when it was part of Lima Township. The property became a part of Pataskala in 1996 and was re-zoned agricultural, which made the minimum lot size ten acres.
 {¶ 4} The Board of Zoning Appeals of the City of Pataskala (hereinafter "BZA") held a public hearing on April 4, 2006. The Smiths' variance application, 2006-111, was one of the items heard. Several people spoke against the application. The BZA took a vote. A BZA member made motion to accept Application 2006-111. Two members voted in favor of the variance and three voted against the variance. There was then a discussion between the BZA members and the Director of Planning Alison Terry. Ms. Terry told the BZA that this vote meant that "no action was taken." Transcript April 4, 2006 Hearing at T. 101. BZA Chairman then explained that the BZA could discuss the application within 45 days. Id.
 {¶ 5} On April 18, 2006 the BZA discussed Application 2006-111. The BZA did not take any action.
 {¶ 6} On May 2, 2006 the BZA heard public comment and then took a second vote on Application 2006-111 and granted the application. *Page 3 
 {¶ 7} Appellant then filed an appeal with the Licking County Common Pleas Court pursuant to R.C. Chapter 2506. The trial court affirmed the decision of the BZA. It is from this decision that appellant appeals raising the following three assignments of error:
 {¶ 8} I. THE PATASKALA BOARD OF ZONING APPEALS' VOTE ON A MEETING HELD MAY 2, 2006, GRANTING APPLICATION 2006-111 IS CONTRARY TO THE FACTS AND LAW CONCERNING THE REQUESTED VARIANCES AND NO FINDINGS WERE MADE TO SUPPORT THE VARIANCE PURSUANT TO THE PATASKALA CODIFIED ORDINANCES § 1211.12.
 {¶ 9} II. APPELLANT SUBMITS THAT THE PATASKALA BOARD OF ZONING APPEALS ERRED BY DETERMINING IT HAD MADE NO DECISION AND TAKEN NO ACTION AFTER ITS PUBLIC MEETING OF APRIL 4, 2006, FOLLOWING A 3 TO 2 VOTE AGAINST APPROVAL OF APPLICATION NO. 2006-111.
 {¶ 10} III. THE PATASKALA BOARD OF ZONING APPEALS FAILED TO PROVIDE FOR PUBLIC NOTICE THAT IT WOULD CONSIDER FURTHER INFORMATION AND SUBSEQUENT MEETINGS DISCUSSING APPLICATION 2006-111 AS PROVIDED FOR IN THE CODIFIED ORDINANCES OF THE CITY OF PATASKALA, OHIO.
 {¶ 11} Standard of Review
 {¶ 12} Appellants appealed this matter pursuant to R.C. Chapter 2506. R.C. 2506.04 sets forth the applicable standard of review and provides as follows: "The court may find that the order, adjudication, or decision is unconstitutional, illegal, arbitrary, capricious, unreasonable, or unsupported by the preponderance of *Page 4 
substantial, reliable, and probative evidence on the whole record. Consistent with its findings, the court may affirm, reverse, vacate, or modify the order, adjudication, or decision consistent with the findings or opinion of the court. The judgment of the court may be appealed by any party on questions of law as provided in the Rules of Appellate Procedure and, to the extent not in conflict with those rules, Chapter 2506 of the Revised Code."
 {¶ 13} The Ohio Supreme Court construed the above language in the case of Henley v. Bd. of Zoning Appeals, 90 Ohio St.3d 142, 146,735 N.E.2d 433, 2000-Ohio-493. The Court stated as follows:
 {¶ 14} "[W]e have distinguished the standard of review to be applied by common pleas courts and courts of appeal in R.C. Chapter 2506 administrative appeals. The common pleas court considers the `whole record,' including any new or additional evidence admitted under R.C.2506.03, and determines whether the administrative order is unconstitutional, illegal, arbitrary, capricious, unreasonable, or unsupported by the preponderance of substantial, reliable, and probative evidence. See Smith v. Granville Twp. Bd. of Trustees (1998),81 Ohio St.3d 608, 612, 693 N.E.2d 219, * * * citing Dudukovich v. Lorain Metro.Hous. Auth. (1979), 58 Ohio St.2d 202, 206-207, 389 N.E.2d 1113, — — *."
 {¶ 15} Our standard of review to be applied in a R.C. 2506.04 appeal is more limited in scope. Kisil v. Sandusky (1984), 12 Ohio St.3d 30,34, 465 N.E.2d 848. "This statute grants a more limited power to the court of appeals to review the judgment of the common pleas court only on `questions of law,' which does not include the same extensive power to weigh `the preponderance of substantial, reliable and probative *Page 5 
evidence,' as is granted to the common pleas court." Id. at fn. 4. "It is incumbent on the trial court to examine the evidence. Such is not the charge of the appellate court. * * * The fact that the court of appeals * * * might have arrived at a different conclusion than the administrative agency is immaterial. Appellate courts must not substitute their judgment for those of an administrative agency or a trial court absent the approved criteria for doing so." Lorain CitySchool Dist. Bd. of Edn. v. State Emp. Relations Bd. (1988),40 Ohio St.3d 257, 261, 533 N.E.2d 264.
 {¶ 16} "The standard of review for appellate courts is whether the common pleas court abused its discretion in finding that the administrative order was or was not supported by reliable, probative and substantial evidence." Ashland v. Gene's Citgo, Inc. . (2000), Franklin App. No. 99AP-938. See, also, State ex rel. Baker v. State Personnel Bd.of Review (1999), 85 Ohio St.3d 640, 643, 710 N.E.2d 706.
 {¶ 17} It is based upon this standard that we review appellant's assignments of error.
 I. {¶ 18} In his first assignment of error, appellant argues that the BZA failed to make findings as required by law. We agree
 {¶ 19} This request is for an area variance. This Court has held that the "practical difficulties" test, as enunciated by the Ohio Supreme Court in Duncan v. Middlefield (1986), 23 Ohio St.3d 83, 491 N.E.2d 692, applies to an area variance.
 {¶ 20} In Duncan, the Ohio Supreme Court, stated: "In Kisil v.Sandusky [(1984), 12 Ohio St.3d 30], this court held in the syllabus: `The standard for granting a variance which relates solely to area requirements should be a lesser standard than that *Page 6 
applied to variances which relate to use. An application for an area variance need not establish unnecessary hardship; it is sufficient that the application show practical difficulties.' * * *
 {¶ 21} "While existing definitions of `practical difficulties' are often nebulous, it can safely be said that a property owner encounters `practical difficulties' whenever an area zoning requirement (e.g., frontage, setback, height) unreasonably deprives him of a permitted use of his property. The key to this standard is whether the area zoning requirement, as applied to the property owner in question, is reasonable. The practical difficulties standard differs from the unnecessary hardship standard normally applied in use variance cases, because no single factor controls in a determination of practical difficulties. A property owner is not denied the opportunity to establish practical difficulties, for example, simply because he purchased the property with knowledge of the zoning restrictions. (Citation omitted).
 {¶ 22} "The factors to be considered and weighed in determining whether a property owner seeking an area variance has encountered practical difficulties in the use of his property include, but are not limited to: (1) whether the property in question will yield a reasonable return or whether there can be any beneficial use of the property without the variance; (2) whether the variance is substantial; (3) whether the essential character of the neighborhood would be substantially altered or whether adjoining properties would suffer a substantial detriment as a result of the variance; (4) whether the variance would adversely affect the delivery of governmental services (e.g., water, sewer, garbage); (5) whether the property owner purchased the property with knowledge of the zoning restriction; (6) whether the property owner's predicament *Page 7 
feasibly can be obviated through some method other than a variance; (7) whether the spirit and intent behind the zoning requirement would be observed and substantial justice done by granting the variance."
 {¶ 23} In the instant case, the BZA discussed the factors of Codified Ordinance of the City of Pataskala § 1211.07 during the April 4, 2006 meeting. This section states in relevant part:
 {¶ 24} "In determining whether practical, difficulties exist, the Board of Zoning Appeals shall consider the following factors to determine if the zoning regulation at issue unreasonably deprives an owner of a permitted utilization of the subject property:"
 {¶ 25} "(a) Whether the property in question will yield a reasonable return or if there can be a beneficial use of the property without the variance;"
 {¶ 26} "(b) Whether there are unique physical circumstances or conditions that prohibit the property from being developed in strict conformity with the zoning regulation such that a variance is necessary to enable the reasonable use of the property;"
 {¶ 27} "(c) Whether the variance requested is substantial;"
 {¶ 28} "(d) Whether the essential character of the neighborhood would be substantially altered or adjoining properties would suffer a substantial detriment as a result of the variance;"
 {¶ 29} "(e) Whether the variance, if granted, will substantially or permanently impair the appropriate use or development of adjacent property;"
 {¶ 30} "(f) Whether the variance, if granted, will be detrimental to the public welfare;" *Page 8 
 {¶ 31} "(g) Whether the variance, if granted, would adversely affect the delivery of governmental services;"
 {¶ 32} "(h) Whether the property owner purchased the subject property with knowledge of the zoning restriction;"
 {¶ 33} "(i) Whether the property owner's predicament can be obviated through some other method than variance;"
 {¶ 34} "(j) Whether the variance, if granted, will represent the minimum variance that will afford relief and represent the least modification possible of the requirement at issue; and,"
 {¶ 35} "(k) Whether the spirit and intent behind the zoning requirement would be observed and substantial justice done by granting the variance."
 {¶ 36} We find the Codified Ordinance of the City of Pataskala § 1211.07 to be similar to the practical difficulties test ofDuncan.
 {¶ 37} In discussing these factors, Chairman Howard of the BZA stated:
 {¶ 38} "My basic understanding of the zoning is that the zoning is here to protect existing people that are in the community, not for future people who come for the sake of zoning."
 {¶ 39} "I take it these people (inaudible) 1.99 acres testimony that he bought into this community predicated on his knowledge of the base zoning in the community. He made an investment, although he's a person with one of the smallest lots saying, hey, you know, I did leverage these larger lots in the area and I bought into it with the anticipation of that's what we would have." *Page 9 
 {¶ 40} "The zoning in the community is presently zoned 10 acres. To go from 10 acres to 2 acres is, if I'm not mistaken, a gross variance. We have guidelines in our book defining area of variances, specifically says that no variance in area should be — does say should, it said — I think it said should, really should not be greater than 80 percent from the base line. According to that, a given variance for this area 10 acres, the book would recommend that you not be greater than 10 acres (inaudible) 8 acres."
 {¶ 41} "Having said this is a non-existing — I mean preexisting non-conforming — not to make the lot even greater non-conforming, we have the right as a board to do that. That's why we're here today."
 {¶ 42} "One last concern that I have is that one basic premise of a zoning is that you really shouldn't create your own hardship and also financial gain is not a reason for granting a zoning variance. By drawing the line where they drew it, they're creating a hardship, at least for the side yard variance on that one side. They're also creating a need to get a variance for the second lot." Transcript of April 4, 2006 hearing at 89-91.
 {¶ 43} There was then further discussion between the BZA members. Mr. Cameron in particular was concerned that the area was not suitable for agriculture and was zoned inappropriately. T. at 92. Further, it was noted that the Smiths intended to subdivide the property when it was purchased 25 years prior. T. at 92. The members then voted with two for the variance and three against it. T. at 100-101.
 {¶ 44} Codified Ordinance of the City of Pataskala § 1211.12 provides in relevant part:
 {¶ 45} "Within thirty (30) days after the public hearing required in Section 1211.09, the Board of Zoning Appeals shall either approve, approve with supplementary *Page 10 
conditions as specified in Section 1211.08, or disapprove the request for appeal or variance. If the application is approved, or approved with supplementary conditions, the Board of Zoning Appeals shall make a finding that the reasons set forth in the application justify the granting of the variance that will make possible a reasonable use of the land, building or structure."
 {¶ 46} The BZA then must make a finding that the reasons set forth in the Smiths' application justify the variance. This finding does not have to be written, but the BZA must state its findings for the record. Here, the BZA approved the variance of Application 2006-111 on May 2, 2006 by a vote. Transcript May 2, 2006 hearing at 21.
 {¶ 47} However, the BZA subsequently failed to make any findings when it approved the variance at the May 2, 2006 hearing. The record is devoid of any findings in support of its vote.
 {¶ 48} Appellant's first assignment of error is sustained. The remaining assignments of error are moot. *Page 11 
 {¶ 49} Accordingly, the decision of the Licking County Court of Common Pleas is reversed. This matter is remanded to the Board of Zoning Appeals of the City of Pataskala for further proceedings in accordance with this decision.
 Delaney, J. Gwin, P.J. and Wise, J. concur *Page 12 
 JUDGMENT ENTRY
For the reasons stated in our accompanying Memorandum-Opinion on file, the judgment of the Licking County Court of Common Pleas is reversed and this matter matter is remanded to the BZA. Costs assessed to appellee. *Page 1